AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO
DEC 22 2022
MITCHELL R. ELFERS
CLERK OF COURT

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
(1) blue in color Samsung A03 (Subject Telephone)

Case No. 22-1903 MR

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, attached and incorporated fully by reference herein.

located in the _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, attached and incorporated fully by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324(a)(1)(A)(v)(I) | Conspiracy to Smuggle Illegal Aliens - all sections |

The application is based on these facts:
See attached affidavit, Attachement C, attached and incorporated fully by reference herein.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Arturo E. Morales, U.S. Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____
*(specify reliable electronic means).*

Date: 12-22-2022

*Judge's signature*

City and state: Las Cruces, New Mexico

The Hon. Kevin R. Sweazea, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The affidavit, *see* **Attachment C**, is submitted in support of a warrant to search and seize information, more fully described in **Attachment B**, contained in the following electronic devices, to include any SIM cards found in or with Subject two Phones.

### Subject's Telephone

Subject's cell phone is described as the following: a blue Samsung A03 cellular phone which was seized from Daniel Ramirez at the time of his arrest on September 14, 2022. Subject's cell phone is currently in the custody of Border Patrol in Santa Teresa, New Mexico.



## ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED/INFORMATION TO BE RETRIEVED

The particular things to be seized include all records, in whatever format, stored on the cellular telephone described in **Attachment A** ("Subject Telephone") that are related to violations of 8 U.S.C.§ 1324 by Daniel Ramirez and his co-conspirators, including:

1. Digital, cellular, direct connect, and/or other phone numbers, names, addresses, and other identifying information of customers, distributors, sources of supply and other associates of the user of the Subject Telephone.

2. Digital, cellular, direct connect, and/or other phone numbers dialed from, which contacted, or which are otherwise stored on, the Subject Telephone, along with the date and time each such communication occurred.

3. Any message logs or messages, whether sent from, to, or drafted on, the Subject Telephone, along with the date and time each such communication occurred.

4. The content of voice mail messages stored on the Subject Telephone, along with the date and time each such communication occurred.

5. Message logs and messages sent from, to, or drafted on, the Subject Telephone through applications such as Facebook, WhatsApp, Snapchat, etc., along with the date and time each communication occurred.

6. Photographs or video recordings.

7. Information relating to the schedule, whereabouts, or travel of the user of the Subject Telephone.

8. Information relating to other methods of communications utilized by the user of the Subject's Cellphone and stored on the Subject Telephone.

9. Bank records, checks, credit card bills, account information and other financial records; and

10. Evidence of user attribution showing who used or owned the Subject Telephone, such as logs, phonebooks, saved usernames and passwords, documents, and internet browsing history.

## ATTACHMENT C

## AFFIDAVIT IN SUPPORT OF ORDER AUTHORIZING SEARCH WARRANT

Your Affiant, Arturo E. Morales having been duly sworn, does hereby depose and say:

1. I have been a federal law enforcement officer since 2003, and I am currently a Border Patrol Agent with the United States Border Patrol, which is a division of United States Customs and Border Protection. I am currently assigned to Homeland Security Investigations (HSI) as a Task Force Officer (TFO). I am empowered, as a TFO, to effect arrests, searches, and seizures for violations of various federal laws. I have participated in numerous human smuggling investigations, either as a case agent or in various support roles.

2. I am familiar with the facts and circumstances of this investigation as result of my personal participation in the investigation, discussions with other agents who were involved in the investigation, and review of reports written by other agents concerning the investigation.

3. Through my training and experience, I know that human smugglers often maintain one or more electronic devices, cellular or "smart" telephones, which they utilize to further human smuggling schemes. Human smugglers use these devices to communicate operational directives and information concerning the conduct of the organization's illegal activities to other organization members and associates, including coordinators, recruiters, transporters, guides, and other co-conspirators. I know, based upon my training and experience, that timely communication of information between organizational members is critical to the overall success of an organization's illegal activities. The critical nature of this information is derived from the necessity of the organization's management to provide instructions for the crossing, harboring, and transport of illegal aliens, as well as the distribution and laundering of the proceeds of these illegal activities.

4. I further know from my training and experience that a cache of information including dialed, received, or missed calls and text messages sent, received, or placed in draft status, can be found on these devices. I know that the identities and telephone numbers of other participants in the human smuggling activity are maintained in the contact lists of these devices. In my experience, human smugglers also use these devices to take and store photographs or video recordings of pick-up and drop-off locations, stash houses, and wire transfer receipts. Human smugglers also use these devices to take and store photographs or video recordings of themselves with their co-conspirators and with contraband including illegal aliens, narcotics, currency, and firearms. Human smugglers also use the GPS or location applications of these devices, which can reveal their

1

whereabouts when they conducted or arranged human smuggling related activities or travel. In addition, human smugglers also use these devices to store information related to the financial transactions that occur during their human smuggling schemes such as wire transfers and financial accounts and transactions. In my experience, the devices used by human smugglers often contain evidence relating to their human smuggling activities including, but not limited to, contact lists, lists of recent call activity, stored text and voice mail messages, photographs and video recordings, GPS and location information, and financial accounts and records.

5. I further know that some devices utilize subscriber identity module ("SIM") cards. A SIM card is a chip that is used to authenticate a device to a network. The SIM card generally contains subscriber information, authentication information, and may contain contacts and encryption information. The portability of SIM cards in some devices allows a user to easily change devices, while maintaining the same telephone number, by removing the card from one device and inserting it into another. While SIM cards may have the capability to store some of the evidence described above, the storage capacity of devices tends to far exceed that of SIM cards. What information is stored on the SIM card, on the device, or is stored in both locations varies depending on the user-defined settings on the device and the memory capacity of the SIM card. Accordingly, information pertaining to drug trafficking activity may be located on both the SIM card itself, as well as the device in which the SIM card was inserted.

6. The following information is based upon my personal knowledge as well as information provided by other federal, state, or local officers and is presented as probable cause to search a blue in color Samsung Galaxy A03, which was seized from Daniel Ramirez's person pursuant to his arrest on September 14, 2022, for alien smuggling (Subject Telephone). Subject Telephone is also described in **Attachment A**.

7. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included every known fact regarding the investigation. More specifically, I have set forth only pertinent facts that I believe are necessary to establish probable cause to search the Subject Telephone for evidence of violations of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(A)(v)(I), the transportation of illegal aliens and conspiracy to transport illegal aliens.

8. The request to search Subject Telephone is based on the following facts:

    A. On September 14, 2022, Border Patrol Agents opened an investigation into Daniel Ramirez (Ramirez) when they encountered Ramirez picking up and transporting four undocumented aliens on New Mexico (NM) Highway 9, mile marker 144, near Santa Teresa, NM.

2

B. On September 13, 2022, Border Patrol Agent (BPA) Garcia, while patrolling NM Highway 9, observed a gray four-door sedan (a Kia Forte) parked on the side of the road with the lights off and the trunk open. BPA Garcia pulled up behind the sedan at approximately 10:45 p.m. and offered assistance to the lone male driver of the gray sedan. The male driver replied "no, I had a flat tire." BPA Garcia did not observe any other persons in the gray sedan and observed the male place a shredded tire in the trunk of the vehicle. BPA Garcia noticed that the gray sedan did not have any tools to aid him in changing a tire nor were there any skid marks or damages to the road which would be consistent with a blowout of a tire. At that time, BPA Garcia returned to his marked Government vehicle and proceeded to the operational Highway 9 checkpoint located at mile marker 144. BPA Garcia did observe the Kia Forte turn on its lights and proceed onto the highway.

C. Once BPA Garcia arrived at the Highway 9 checkpoint, which took approximately five minutes to drive to, BPA Garcia debriefed the BPAs working the checkpoint and anticipated the arrival of the gray Kia Forte that he previously observed. At approximately 11:15 pm, the gray Kia Forte drove to the checkpoint. BPA Acosta conducting the immigration inspection of the driver of the gray Kia Forte, who was identified as Daniel Ramirez. At that time, BPA Garcia approached the vehicle and noticed the blown-out tire was now in the front passenger seat, which BPA Garcia had previously observed Ramirez place in the trunk of the gray Kia Forte. BPA Acosta asked Ramirez if he was the only person in the vehicle to which he stated "yes." At that time, BPA Reisdorf observed an individual laying flat behind the front seats covered in towels.

D. BPA Acosta asked Ramirez to exit the vehicle and instructed the individual laying under the towels on the floorboard of the back seat to sit up and exit the vehicle. BPAs questioned the concealed individual's citizenship to which he replied he was a citizen of Guatemala. BPAs asked if there were any other individuals in the car and the Guatemalan national stated in the trunk. Due to the possibility of injury or even death of individuals driven in the trunk of a vehicle, BPAs attempted to open the trunk compartment. The truck compartment could not be opened with the keys or the trunk release. BPAs managed to access the trunk through the back seat of the Kia Forte. Three subjects were safely removed from the trunk compartment and a field interview revealed that two individuals were citizens of Mexico and one was a citizen of Guatemala. All four subjects admitted to being illegally in the United States, and to making illegal entry into the United States International boundary west of Santa Teresa, New Mexico.

E. Ramirez was read his rights via government form I-214, which he acknowledged and signed. Ramirez waived his rights to an attorney and

3

agreed to speak to BPAs. Ramirez confessed to picking up the undocumented aliens. Ramirez stated that he agreed with a known human smuggler in Mexico to pick up and transport a group of undocumented aliens New Mexico (NM) Highway 9, mile marker 144, near Santa Teresa, NM and to transport them to El Paso, Texas in exchange for money. Ramirez stated that he communicated with the known smuggler via WhatsApp on the Subject Telephone, which was found on his person at the time of arrest.

F. Ramirez gave verbal and written consent to BPAs to search his smart phone. BPAs were able to view evidence of alien smuggling activity on Ramirez's phone he had provided consent to view. Items viewed included directions to the pickup location, names, and communications with undocumented alien smugglers, and Ramirez asking if facilitator had work for him three days before his arrest.

G. Ramirez stated he knew the subjects he was transporting were undocumented aliens. Ramirez stated the people he was smuggling on that day belonged to "Jesus Juanito" who is a known alien smuggler operating from Mexico.

9. Based on the above information, there is probable cause to believe that evidence of violations of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(A)(v)(I) are in the Subject Telephone. Therefore, I respectfully request that this Court issue search warrants for the Subject Telephone, more particularly described in **Attachment A**, authorizing the seizure and examination of the items described in **Attachment B**.

_____
Arturo E. Morales
United States Border Patrol Agent

SUBSCRIBED and SWORN to ~~before me telephonically~~ by telephone this December 22, 2022.

_____
THE HONORABLE KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

4